B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>CALIFORNIA BANK & TRUST | DEFENDANTS<br>ANNA DOROSHINA<br>SERGE DOROSHIN |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Anthony J. Napolitano & Barry A. Smith<br>BUCHALTER NEMER, P.C.<br>1000 Wilshire Boulevard, 15th Floor<br>Los Angeles, CA 90017    \|   Tel: (213) 891-0700 | ATTORNEYS (If Known)<br>James Selth<br>WEINTRAUB & SELTH<br>11766 Wilshire Boulevard, Suite 1170<br>Los Angeles, CA 90025    \|   Tel:  (310) 207-1494 |
| PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor    ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☒ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Determination of Nondischargeability under 11 U.S.C. §523; Objection to Discharge under 11 U.S.C. §727; Declaratory Relief;
Recission under California Civil Code 1689; Fraud and Negligent Misrepresentation

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| | |
|---|---|
| **FRBP 7001(1) – Recovery of Money/Property**<br>☐ 11-Recovery of money/property - §542 turnover of property<br>☐ 12-Recovery of money/property - §547 preference<br>☐ 13-Recovery of money/property - §548 fraudulent transfer<br>☐ 14-Recovery of money/property - other | **FRBP 7001(6) – Dischargeability (continued)**<br>☐ 61-Dischargeability - §523(a)(5), domestic support<br>☒ 68-Dischargeability - §523(a)(6), willful and malicious injury<br>☐ 63-Dischargeability - §523(a)(8), student loan<br>☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation<br>     (other than domestic support) |
| **FRBP 7001(2) – Validity, Priority or Extent of Lien**<br>☐ 21-Validity, priority or extent of lien or other interest in property | ☐ 65-Dischargeability - other |
| **FRBP 7001(3) – Approval of Sale of Property**<br>☐ 31-Approval of sale of property of estate and of a co-owner - §363(h) | **FRBP 7001(7) – Injunctive Relief**<br>☐ 71-Injunctive relief – imposition of stay<br>☐ 72-Injunctive relief – other |
| **FRBP 7001(4) – Objection/Revocation of Discharge**<br>☒ 41-Objection / revocation of discharge - §727(c),(d),(e) | **FRBP 7001(8) Subordination of Claim or Interest**<br>☐ 81-Subordination of claim or interest |
| **FRBP 7001(5) – Revocation of Confirmation**<br>☐ 51-Revocation of confirmation | **FRBP 7001(9) Declaratory Judgment**<br>☐ 91-Declaratory judgment |
| **FRBP 7001(6) – Dischargeability**<br>☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims<br>☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation,<br>     actual fraud<br>☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny | **FRBP 7001(10) Determination of Removed Action**<br>☐ 01-Determination of removed claim or cause |
| | **Other**<br>☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq<br>☐ 02-Other (e.g. other actions that would have been brought in state court<br>     if unrelated to bankruptcy case) |
| **(continued next column)** | |

| | |
|---|---|
| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | Demand $ 27,000,000.00 |

Other Relief Sought
Declaratory relief, recission and judgments against non-debtor defendant for fraud and negligent misrepresentation

American LegalNet, Inc.
www.FormsWorkflow.com

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>ANNA DOROSHINA | BANKRUPTCY CASE NO.<br>6:15-bk-12147 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Riverside | NAME OF JUDGE<br>Hon. Scott Yun |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>June 8, 2015 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Anthony J. Napolitano | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

American LegalNet, Inc.
www.FormsWorkflow.com

1  BARRY A. SMITH (State Bar No. 51623)
   bsmith@buchalter.com
2  ANTHONY J. NAPOLITANO (State Bar No. 227691)
   anapolitano@buchalter.com
3  BUCHALTER NEMER
  A Professional Corporation
4  1000 Wilshire Boulevard, Suite 1500
  Los Angeles, CA  90017-2457
5  Telephone: (213) 891-0700
  Facsimile: (213) 896-0400
6
  Attorneys for Plaintiff
7  CALIFORNIA BANK & TRUST

8

9                    **UNITED STATES BANKRUPTCY COURT**

10                   **CENTRAL DISTRICT OF CALIFORNIA**

11                        **RIVERSIDE DIVISION**

12  | In re | Case No. 6:15-bk-12147-SY |
13  ANNA DOROSHINA            Chapter 7

14             Debtor.          Adv. Proc. No. 6:15-ap-01165-SY

15  

16  CALIFORNIA BANK & TRUST,   **FIRST AMENDED COMPLAINT FOR:**

17             Plaintiff,       **(I)  DETERMINATION OF
       vs.                     NONDISCHARGEABILITY OF DEBT
                                PURSUANT TO 11 U.S.C. § 523;**
18
  ANNA DOROSHINA and         **(II)  OBJECTION TO DISCHARGE
19  SERGE DOROSHIN,               PURSUANT TO 11 U.S.C. § 727;**

20             Defendants.      **(III)  DECLARATORY RELIEF;**

21                              **(IV)  RESCISSION;**

22                              **(V)  FRAUD; AND**

23                              **(VI)  NEGLIGENT
                                MISREPRESENTATION**
24

25       Plaintiff California Bank & Trust (the "Plaintiff"), in accordance with Federal Bankruptcy

26  Rule of Procedure 7008(a) consents to entry of final orders and final judgments of the United

27  States Bankruptcy Court, Central District of California (the "Bankruptcy Court"), and hereby

28  complains and alleges as follows:

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LAW ANGELES

BN 18454789V1

---

**FIRST AMENDED COMPLAINT**

# I.

## JURISDICTION AND VENUE

1.      On March 5, 2015, Anna Doroshina (the "Debtor") commenced her chapter 7 bankruptcy case designated as *In re Doroshina*, Case No. 6:15-bk-12147-SY (the "Bankruptcy Case") pending in this Bankruptcy Court.

2.      This *First Amended Complaint for (I) Determination of Nondischargeability of Debt Pursuant to 11 U.S.C. § 523; (II) Objection to Discharge Pursuant to 11 U.S.C. § 727; (III) Declaratory Relief; (IV) Rescission; (V) Fraud; and (VI) Negligent Misrepresentation* (the "Complaint") arises in the Debtor's Bankruptcy Case, and is brought pursuant to Rule 7001(a)(4), (a)(6), (a)(7) and (a)(9) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in accordance with the provisions of Part VII of the Bankruptcy Rules.

3.      This Complaint constitutes the initiation of an adversary proceeding arising under 11 U.S.C. §§ 523 and 727 of title 11 of the United States Code (the "Bankruptcy Code") in connection with the Bankruptcy Case.   This Bankruptcy Court has jurisdiction over this proceeding by reason of 28 U.S.C. § 1334(a) and (b); 28 U.S.C. § 157(a), (b)(2)(I), (b)(2)(J) and (c)(1); and General Order No. 266 of the United States District Court for the Central District of California.

4.      Pursuant to 28 U.S.C. § 1409(a), this adversary proceeding (the "Adversary Proceeding") is properly commenced and prosecuted in this Bankruptcy Court in which the Debtor's Bankruptcy Case is pending.

# II.

## PARTIES

5.      California Bank & Trust was, and now is, a corporation, organized and existing under and by virtue of the laws of the State of California, with its principal place of business in the County of Los Angeles, California, and doing business in the County of Riverside, California.

6.      On or about July 17, 2009, California Bank & Trust acquired substantially all of the assets of Alliance Bank from the Federal Deposit Insurance Corporation (the "FDIC"), as

receiver for Alliance Bank, which assets included the loans to the Debtor's entities that are the subject of this Complaint.

7.    The Plaintiff is informed and believes and thereupon alleges that defendant, Anna Doroshina, was, and is, an individual residing within the County of Riverside, State of California.

8.    The Plaintiff is informed and believes and thereupon alleges that defendant, Serge Doroshin, was, and is, an individual residing within the County of Riverside, State of California.

### III.

### FACTUAL BACKGROUND

**A.    The June 29, 2006 Secured Loan to C2AS, LP.**

9.    On or about June 29, 2006, C2AS, LP, a California limited partnership ("C2AS-LP"), executed and delivered to Alliance Bank, as the original lender, a written Promissory Note (the "C2AS Note") in the original principal sum of $11,236,000.00 (the "C2AS Loan").

10.    Upon information and belief, C2AS, LLC, a California limited liability company ("C2AS-LLC"), owned an interest in C2AS-LP, and was the general partner of C2AS-LP. The Debtor was the Managing Member and sole member of C2AS-LLC.

11.    The C2AS Note was secured by a Deed of Trust dated June 29, 2006, and recorded on July 7, 2006 in the Official Records, County of Riverside, as Instrument No. 2006-0497614 (the "C2AS Deed of Trust") against certain vacant land consisting of 300+ acres located in Corona, California 92882 (the "C2AS Collateral").

12.    On or about June 29, 2006, the Debtor executed a Commercial Guaranty in favor of Alliance Bank, which guarantees the obligations of C2AS-LP under the Note (the "C2AS Guaranty").

13.    Thereafter, C2AS-LP and the Plaintiff executed three separate Change in Terms Agreements dated on or about June 7, 2007, September 17, 2007, and March 26, 2008, which modified the C2AS Note to change the amount, maturity date or interest rates charged on the C2AS Note (the "C2AS Change in Terms Agreements").

BN 18454789V1

2

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**FIRST AMENDED COMPLAINT**

14.    In late 2008, C2AS-LP failed to pay the property taxes due on the C2AS Collateral, which constituted a default under the C2AS Loan Documents (as defined below).

15.    Accordingly, on or about November 25, 2008, Alliance Bank recorded its Notice of Default against the C2AS Collateral.

16.    The C2AS Note also matured on its own terms on or about December 29, 2009, and all sums owed thereunder separately became due and payable to the Plaintiff.

17.    On February 6, 2009, the California Department of Financial Institutions closed Alliance Bank. The FDIC succeeded to all of the assets and liabilities of Alliance Bank and, thereafter, assigned all right, title, and interest to certain of the assets including, without limitation, the C2AS Note, the C2AS Deed of Trust, the C2AS Guaranty, the C2AS Change in Terms Agreements, and all documents related thereto (collectively, the "C2AS Loan Documents") to the Plaintiff.

**B.    The August 4, 2006 Secured Loan to Far West Corona.**

18.    On or about August 4, 2006, Far West Corona Properties, LP, a California limited partnership ("Far West Corona"), executed and delivered to Alliance Bank, as the original lender, a written Promissory Note (the "Far West Note") in the original principal sum of $4,197,000.00 (the "Far West Loan").

19.    Upon information and belief, Far West Homes, LLC, a California limited liability company ("Far West Homes"), owned a 1% interest in Far West Corona and was its General Partner. The Debtor owned a 99% interest in Far West Corona and was a limited partner. The Debtor was also the Managing Member and sole member of Far West Homes.

20.    The Far West Note was secured by (i) a Deed of Trust dated August 4, 2006, and recorded on August 10, 2006 in the Official Records, County of Riverside, as Instrument No. 2006-0590426 (the "Far West 1 Deed of Trust") against certain vacant land consisting of 275 acres located in Corona, California 92882 (the "Far West 1 Collateral"); (ii) a Deed of Trust dated August 4, 2006, and recorded on August 10, 2006 in the Official Records, County of Riverside, as Instrument No. 2006-0590427 (the "Far West 2 Deed of Trust") against certain vacant land

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**FIRST AMENDED COMPLAINT**

consisting of 249 acres located in Corona, California 92882 (the "Far West 2 Collateral" and together with the Far West 1 Collateral, the "Far West Collateral").

21.    On or about August 4, 2006, the Debtor executed a Commercial Guaranty in favor of Alliance Bank, which guarantees the obligations of Far West Corona under the Note (the "Far West Guaranty").

22.    Thereafter, Far West Corona and the Plaintiff executed four separate Change in Terms Agreement dated on or about February 8, 2007, August 3, 2007, October 26, 2007, and March 26, 2008, which modified the Far West Note to change the amount, maturity date or interest rates charged on the Far West Note (the "Far West Change in Terms Agreements").

23.    In late 2008, Far West Corona failed to pay the property taxes due on the Far West Collateral, which constituted a default under the Far West Loan Documents (as defined below).

24.    Thereafter, Alliance Bank recorded its Notice of Default against the Far West Collateral.

25.    The Far West Note also matured on its own terms on or about February 5, 2010, and all sums owed thereunder separately became due and payable to the Plaintiff.

26.    On February 6, 2009, the California Department of Financial Institutions closed Alliance Bank.  The FDIC succeeded to all of the assets and liabilities of Alliance Bank and, thereafter, assigned all right, title, and interest to certain of the assets including, without limitation, the Far West Note, the Far West 1 Deed of Trust, the Far West 2 Deed of Trust, the Far West Guaranty, the Far West Change in Terms Agreements, and documents related thereto (collectively, the "Far West Loan Documents") to the Plaintiff.

**C.    The C2AS Litigation.**

27.    On or about May 14, 2009, the Plaintiff filed a Complaint against C2AS-LP, C2AS-LLC, and the Debtor, among others, in the California Superior Court, County of Riverside, bearing Case No. RIC 526621 (the "C2AS Action"), alleging various defaults under the C2AS Loan Documents including breach of the C2AS Guaranty.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 18454789V1

4

**FIRST AMENDED COMPLAINT**

28.    The Complaint in the C2AS Action was amended on four separate occasions to include additional facts and causes of action and to add additional defendants, including Far West Housing, LLC, a California limited liability company ("Far West Housing").

29.    On or about March 1, 2011, C2AS-LP filed a voluntary chapter 11 petition under the Bankruptcy Code in the Bankruptcy Court designated as Case No. 1:11-bk-12528-MT, which was subsequently dismissed on or about December 22, 2011.

30.    On July 26, 2011 and July 27, 2011, arbitration took place of the Plaintiff's claim against the Debtor for breach of the C2AS Guaranty.

31.    The arbitrator granted the Plaintiff an award against the Debtor in the sum of $17,351,401.01 for breach of the C2AS Guaranty (the "C2AS Arbitration Award").

32.    On January 31, 2012, the Plaintiff, East West Bank, and Inland Communities Corp., on the one hand, and C2AS-LP, C2AS-LLC, the Debtor, S. Doroshin and Far West Housing (collectively, the "C2AS Settling Defendants"), on the other hand, entered into a Settlement Agreement and Mutual Release (the "C2AS Settlement Agreement").

33.    Pursuant to the C2AS Settlement Agreement, the C2AS Settling Defendants agreed to execute a *Stipulation for Confirmation of the Arbitration Award and Entry of Judgment and [Proposed] Judgment* pursuant to which the Plaintiff would be granted an immediate judgment against the Debtor in the full amount of the C2AS Arbitration Award, plus statutory interest, less the proceeds from the foreclosure sale of the C2AS Collateral.

34.    On February 16, 2012, the Plaintiff and the Debtor filed that certain *Stipulation for Confirmation of Arbitration Award and Entry of Judgment* in the C2AS Action, whereby the Plaintiff and the Debtor agreed that the C2AS Arbitration Award should be confirmed by the Riverside Superior Court, and that judgment should be entered against the Debtor in the amount of the C2AS Arbitration Award.

35.    Thereafter, the Riverside Superior Court entered Judgment on February 22, 2012 against the Debtor and in favor of the Plaintiff in the amount of $13,851,400.01 (the "C2AS Judgment").

BN 18454789V1

5

**FIRST AMENDED COMPLAINT**

36.     On March 9, 2012, the Plaintiff filed its Notices of Judgment Lien with the California Secretary of State as against the Debtor bearing Instrument Nos. 127305764499 and 127305764631 with respect to the C2AS Judgment.

37.     On March 5, 2015, the Debtor filed her *Schedule F – Creditors Holding Unsecured Nonpriority Claims* [Docket No. 1] in the above-captioned bankruptcy case, and listed the Plaintiff as holding an unsecured claim in the amount of $18,048,563.00 as of the Debtor's Petition Date based on the C2AS Judgment (the "C2AS Claim").

38.     The Debtor did not indicate on *Schedule F* that the C2AS Claim was either contingent, unliquidated or disputed.

**D.     The Far West Corona Litigation.**

39.     On or about May 14, 2009, the Plaintiff filed its complaint against Far West Corona and the Debtor, among others, in the California Superior Court, County of Riverside bearing Case No. RIC 526621 (the "Far West Action"), alleging various defaults under the Far West Loan Documents, including breach of the Far West Guaranty.

40.     On or about October 19, 2011, arbitration of the Plaintiff's claim against the Debtor for breach of the Far West Guaranty took place.  The arbitrator granted the Plaintiff an award against the Debtor in the sum of $6,939,360.11 for breach of the Far West Guaranty (the "Far West Arbitration Award").

41.     On January 31, 2012, the Plaintiff and Inland Communities Corp., on the one hand, and Far West Corona, Far West Homes, C2AS-LP, the Debtor, and S. Doroshin (collectively, the "Far West Settling Defendants"), on the other hand, entered into a Settlement Agreement and Mutual Release (the "Far West Settlement Agreement" and together with the C2AS Settlement Agreement, the "Settlement Agreements").

42.     Pursuant to the Far West Settlement Agreement, the Far West Settling Defendants agreed to execute a *Stipulation for Confirmation of the Arbitration Award and Entry of Judgment and [Proposed] Judgment* pursuant to which the Plaintiff would be granted an immediate

judgment against the Debtor in the full amount of the Far West Arbitration Award, plus statutory interest, less the proceeds from the foreclosure sale of the Far West Collateral.

43.    On February 16, 2012, the Plaintiff and the Debtor filed that certain *Stipulation for Confirmation of Arbitration Award and Entry of Judgment* in the Far West Action, whereby the Plaintiff and the Debtor agreed that the Far West Arbitration Award should be confirmed by the Riverside Superior Court, and that judgment should be entered against the Debtor in the amount of the Far West Arbitration Award.

44.    Thereafter, the Riverside Superior Court entered Judgment on February 29, 2012 against the Debtor and in favor of the Plaintiff in the amount of $6,939,360.11 (the "Far West Judgment").

45.    On March 9, 2012, the Plaintiff filed its Notices of Judgment Lien with the California Secretary of State as against the Debtor bearing Instrument Nos. 127305764499 and 127305764631 with respect to the Far West Judgment.

46.    On March 5, 2015, the Debtor filed her *Schedule F – Creditors Holding Unsecured Nonpriority Claims* [Docket No. 1] in the above-captioned bankruptcy case, and listed the Plaintiff as holding an unsecured claim in the amount of $9,040,180.00 based on the Far West Judgment (the "Far West Claim").

47.    The Debtor did not indicate on *Schedule F* that the Far West Claim was either contingent, unliquidated or disputed.

**E.    The Debtor Held Herself Out as a Successful Real Estate Developer to Obtain the C2AS Loan.**

48.    In order to induce Alliance Bank to provide the C2AS Loan, the Debtor and S. Doroshin represented to Alliance Bank that the Debtor and S. Doroshin had processed and entitled approximately 881 acres of residential land in Corona, California and Norco, California since 2000 resulting in over 600 lots for sale to residential builders.  Specifically, the Debtor and S. Doroshin represented to Alliance Bank that:

**FIRST AMENDED COMPLAINT**

     a.     The Debtor's and S. Doroshin's involvement in the Norco, California project involved 90 acres mapped into 40 estate single-family home sites which were subsequently in 2001 to KB Homes.

     b.     The Debtor's and S. Doroshin's first Corona, California project involved a 120 acre site approved for 64 single-family home sites, and eventually sold to Taylor Woodrow Homes in 2002.

     c.     The Debtor's and S. Doroshin's second Corona, California project involved 80 acres approved for 157 single-family home sites was purchased by Centex.

49.     In connection with the C2AS Loan, the Debtor and S. Doroshin further represented to Alliance Bank that (i) the Debtor was the President of Far West Housing (the applicant at the time for the C2AS Loan), had 10+ years of experience with responsibilities involving site acquisition and development work, and (ii) S. Doroshin was the Project Manager of Far West Housing with 10+ years of experience in project management.

50.     The Debtor and S. Doroshin also represented to Alliance Bank in connection with the C2AS Loan that they have developed excellent working relationships with the City of Corona and Riverside County in connection with their past land entitlement projects.

51.     The Debtor and S. Doroshin represented to Alliance Bank with respect to the C2AS Loan that in the event that the Debtor was unable to run the company's operations, S. Doroshin could manage the development in her place.

52.     Finally, the Debtor and S. Doroshin submitted a personal financial statement dated May 15, 2006 to Alliance Bank that showed that the Debtor had a net worth of $90,221,000.00 prior to the execution and funding of the C2AS Loan.

53.     Alliance Bank relied upon the truth and accuracy of the representations and documents that the Debtor and S. Doroshin provided to Alliance Bank in their underwriting of the C2AS Loan and to assess the creditworthiness of the Debtor, who, as the guarantor, would be a primary source of repayment in the event of a loan default.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**FIRST AMENDED COMPLAINT**

**F.    The Debtor Held Herself Out as a Successful Real Estate Developer to Obtain the Far West Loan.**

54.    Similarly, with respect to the Far West Loan, the Debtor and S. Doroshin represented to Alliance Bank that the Debtor and S. Doroshin had processed and entitled approximately 881 acres of residential land in Corona, California and Norco, California since 2000 resulting in over 600 lots for sale to residential builders.  Specifically, the Debtor and S. Doroshin represented to Alliance Bank that:

a.    The Debtor's and S. Doroshin's involvement in the Norco, California project involved 90 acres mapped into 40 estate single-family home sites which were subsequently in 2001 to KB Homes.

b.    The Debtor's and S. Doroshin's first Corona, California project involved a 120 acre site approved for 64 single-family home sites, and eventually sold to Taylor Woodrow Homes in 2002.

c.    The Debtor's and S. Doroshin's second Corona, California project involved 80 acres approved for 157 single-family home sites was purchased by Centex.

55.    In connection with the Far West Loan, the Debtor and S. Doroshin further represented to Alliance Bank that (i) the Debtor was the President of Far West Corona (the applicant for the Far West Loan), had 10+ years of experience with responsibilities involving site acquisition and development work, and (ii) S. Doroshin was the Project Manager of Far West Corona with 10+ years of experience in project management.

56.    The Debtor and S. Doroshin also represented to Alliance Bank in connection with the Far West Loan that they have developed excellent working relationships with the City of Corona and Riverside County in connection with their past land entitlement projects.

57.    The Debtor and S. Doroshin represented to Alliance Bank with respect to the Far West Loan that in the event that the Debtor was unable to run the company's operations, S. Doroshin could manage the development in her place.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**FIRST AMENDED COMPLAINT**

58.    Finally, the Debtor and S. Doroshin submitted a personal financial statement dated May 15, 2006 to Alliance Bank that showed that the Debtor had a net worth of $90,221,000.00 prior to the execution and funding of the Far West Loan.

59.    Alliance Bank relied upon the truth and accuracy of the representations and documents that the Debtor and S. Doroshin provided to Alliance Bank in their underwriting of the Far West Loan and to assess the creditworthiness of the Debtor, who, as the guarantor, would be a primary source of repayment in the event of a loan default.

**G.    The Debtor's Personal Financial Statements.**

60.    In order to further induce Alliance Bank to extend credit to C2AS-LP and Far West Corona, and to provide extensions or modifications of such loan, the Debtor and S. Doroshin provided Alliance Bank with the following Personal Financial Statements:

a.    **The May 15, 2006 Personal Financial Statement:**

i.    The May 16, 2006 Personal Financial Statement (the "5/16/06 PFS") stated that the Debtor had total assets of $99,911,000.00 and total liabilities of $9,690,000.00 providing a total net worth of $90,221,000.00.

ii.    The 5/16/06 PFS disclosed three residences for the Debtor.

iii.    The 5/16/06 PFS disclosed a value of $300,000.00 for "Household, Jewelry, Antiques."

iv.    The 5/16/06 PFS disclosed a value of $57,434,000.00 for the Debtor's interest in Far West Housing and a value of $31,000,000.00 for the Debtor's interest in Far West Corona.

v.    The 5/16/06 PFS further stated that the Personal Financial Statement was furnished for the purpose of procuring credit.

vi.    The Debtor and S. Doroshin certified that they had read the attached financial statement, that it was complete, true and correct, and signed the statement as of May 15, 2006 prior to the execution of the C2AS Loan Documents and the Far West Loan Documents.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**FIRST AMENDED COMPLAINT**

**b.      The December 31, 2006 Personal Financial Statement:**

i.      The December 31, 2006 Personal Financial Statement (the "12/31/06 PFS") stated that the Debtor had total assets of $143,682,000.00 and total liabilities of $2,668,000.00 providing a total net worth of $141,014,000.00.

ii.      The 12/31/06 PFS disclosed three residences for the Debtor.

iii.      The 12/31/06 PFS disclosed a value of $300,000.00 for "Household, Jewelry, Antiques."

iv.      The 12/31/06 PFS disclosed a value of $57,434,000.00 for the Debtor's interest in Far West Housing and a value of $75,000,000.00 for the Debtor's interest in Far West Corona.

v.      The 12/31/06 PFS further stated that the Personal Financial Statement was furnished for the purpose of procuring credit.

vi.      The Debtor and S. Doroshin certified that they had read the attached financial statement, that it was complete, true and correct, and signed the statement as of December 31, 2006.

**c.      The February 27, 2008 Personal Financial Statement:**

i.      The February 27, 2008 Personal Financial Statement (the "2/28/07 PFS") stated that the Debtor had total assets of $141,223,000.00 and total liabilities of $12,646,000.00 providing a total net worth of $128,577,000.00.

ii.      The 2/27/08 PFS disclosed three residences for the Debtor.

iii.      The 2/27/08 PFS disclosed a value of $300,000.00 for "Household, Jewelry, Antiques."

iv.      The 2/27/08 PFS disclosed a value of $1,018,000.00 for the Debtor's interest in Far West Housing, a value of $23,769,000.00 for the Debtor's interest in C2AS, LP, and a value of $100,000,000.00 for the Debtor's interest in Far West Corona.

v.      The 2/27/08 PFS further stated that the Personal Financial Statement was furnished for the purpose of procuring credit.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**FIRST AMENDED COMPLAINT**

vi.    The Debtor and S. Doroshin certified that they had read the attached financial statement, that it was complete, true and correct, and signed the statement as of February 28, 2008.

**d.    The October 24, 2008 Personal Financial Statement:**

i.    The October 24, 2008 Personal Financial Statement (the "10/24/08 PFS") stated that the Debtor had total assets of $141,094,000.00 and total liabilities of $12,624,000.00 providing a total net worth of $128,470,000.00.

ii.    The 10/24/08 PFS disclosed three residences for the Debtor.

iii.    The 10/24/08 PFS disclosed a value of $300,000.00 for "Household, Jewelry, Antiques."

iv.    The 10/24/08 PFS disclosed a value of $1,002,000.00 for the Debtor's interest in Far West Housing, a value of $23,769,000.00 for the Debtor's interest in C2AS-LP, and a value of $100,000,000.00 for the Debtor's interest in Far West Corona.

v.    The 10/24/08 PFS further stated that the Personal Financial Statement was furnished for the purpose of procuring credit.

vi.    The Debtor affirmed that she had read the attached financial statement, that it was complete, true and correct, and signed the statement as of October 24, 2008, and signed the related Individual Financial Statement as of November 3, 2008.

**e.    The April 8, 2009 Personal Financial Statement:**

i.    The April 8, 2009 Personal Financial Statement (the "4/8/09 PFS") stated that the Debtor had total assets of $6,170,000.00 and total liabilities of $32,622,000.00 providing a total net worth of ($26,452,000.00).

ii.    The 4/8/09 PFS disclosed three residences for the Debtor.

iii.    The 4/8/09 PFS disclosed a value of $200,000.00 for "Household, Jewelry, Antiques."

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**FIRST AMENDED COMPLAINT**

iv.    The 4/8/09 PFS disclosed a value of $150,000.00 for the Debtor's interest in Far West Housing, a value of $0.00 for the Debtor's interest in C2AS-LP, and a value of $0.00 for the Debtor's interest in Far West Corona.

v.    The 4/8/09 PFS was not signed by the Debtor.

61.    Copies of the 5/16/06 PFS, the 12/31/06 PFS, the 2/27/08 PFS, the 10/24/08 PFS and the 4/8/09 PFS (collectively, the "Personal Financial Statements") are attached hereto collectively as **Exhibit 1**.

62.    At the time that the Debtor issued her Personal Financial Statements to the Plaintiff, the Debtor was aware or should have been aware of the true value of the Far West Housing and the Far West Corona holdings, and her liability under the C2AS Guaranty and the Far West Guaranty. As a result of the Debtor's misrepresentations, the Debtor's net worth listed on her Personal Financial Statement was overstated by at least $110 million to $140 million, which would have resulted in a negative net worth.

63.    By virtue of these actions, as well as the misrepresentations regarding her experience and expertise, the Debtor and S. Doroshin knowingly made intentional and fraudulent misrepresentations to the Plaintiff in order to induce the Plaintiff to make loans to C2AS-LP and Far West Corona, and to continue to extend credit to C2AS-LP and Far West Corona.

**H.    The Debtor Reveals Her Fraudulent Misrepresentations to Alliance Bank.**

64.    During the course of the C2AS Action and the Far West Action, the Plaintiff took a number of depositions of the Debtor. During the July 13, 2011 deposition, the Debtor admitted the following:

**a.    Experience as a Developer:**

i.    She had no recollection of having entitled 80 detached condos in Moorpark, California or obtaining approval of the tentative tract map by the City of Moorpark as represented on her resume that was submitted to Alliance Bank prior to the execution of the C2AS Loan Documents and the Far West Loan Documents. A copy of that resume is attached hereto as **Exhibit 2**.

ii.     She had no recollection of selling the Moorpark project to Shea Homes as was represented on her resume.

iii.    She admitted that she had never been to the City of Moorpark, nor gone to a meeting of its City Council or met with its Planning Commission.

iv.     She had no recollection of entitling 90 acres into 40 estate and single family sites in Norco, California or obtaining approval of the tentative tract map as was represented on her resume.

v.      She admitted that she had never been to the City of Norco, nor gone to a meeting of its City Council or met with its Planning Commission.

vi.     She admitted that she had no recollection of entitling 120 acres into 64 single family home sites in Corona in 2001 and 2002 as was represented on her resume.

vii.    She admitted that she did not recall entitling 80 acres in Corona into 157 single family units in 2003 and 2004, nor does she recall being involved in the sale of that project to Centex Homes in 2004 as was represented on her resume.

viii.   She further admitted that since 2000, she had three more children in addition to the six that she already had, and has been busy mostly acting as a housewife rather than a partner in any construction project.

ix.     She further testified that "Like I said, I'm a housewife, and my husband is in charge of organizing business, if that answers your question."

**b.      Formation and Management of C2AS-LP and C2AS-LLC:**

i.      She admitted that she had no recollection of the formation or purpose of C2AS-LP or C2AS-LLC.

ii.     She admitted that she did not keep any records of C2AS-LP or of C2AS-LLC notwithstanding her interests as sole member of C2AS-LLC and its role as general partner of C2AS-LP.

iii.    She admitted that she did not know if she had ever been an officer, director or member of any corporate entity within the last 20 years.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**FIRST AMENDED COMPLAINT**

iv.    She testified that she did not recall having reviewed the C2AS Note, the related Business Loan Agreement, the C2AS Deed of Trust or the C2AS Guaranty prior to signing those documents.

**I.    S. Doroshin's "Justification" for Putting the Borrowers and the Guaranty Obligation Solely in the Debtor's Name.**

65.    In connection with the applications for the C2AS Loan and the Far West Loan, S. Doroshin sent an email dated May 17, 2006 to Tim Peralta, the loan broker, explaining why the Debtor was applying solely for the loan.  A copy of that email is attached hereto as **Exhibit 3**.

66.    In that email, S. Doroshin states that "[the Debtor] has been an integral part of our business success.  Basically, I negotiate the deals, entitle the land, and perform the day-to-ay (sic.) duties, while [the Debtor] handles the back-room duties of the business."

67.    S. Doroshin further explained that the divorce from his prior wife destroyed his credit rating, and that the Debtor "sports a great [credit] score – the core of our creditworthiness," and that he "believe[s] that the package would be stronger without [his] presence."

68.    Thereafter, in connection with the modifications to the C2AS Loan and the Far West Loan, the Debtor and S. Doroshin continued to represent that they both had significant experience in real estate entitlement projects, and that the Debtor herself was responsible for site acquisition and development work and running the company.

**J.    The Disclosure of the Transmutation Agreement.**

69.    On May 30, 2013, at a post-judgment examination of a third-party, S. Doroshin first disclosed to the Plaintiff the existence of a "Transmutation Agreement" concerning the Debtor's and S. Doroshin's assets and liabilities.

70.    On or about June 22, 2006, the Debtor and S. Doroshin purportedly entered into a Transmutation Agreement, a copy of which is attached hereto as **Exhibit 4**.

71.    The Transmutation Agreement states that the Debtor and S. Doroshin "have each made a full disclosure of their assets and all facts relevant to" the Transmutation Agreement.

72.    The Transmutation Agreement further acknowledges that "Wife is about to enter into two loan agreements with Alliance Bank ("Lender") that will require her to post a personal

**FIRST AMENDED COMPLAINT**

guarantee for any default against two of her entities; Far West Corona Properties, L.P. and C2AS, L.P."

73.    The Transmutation Agreement further provides that "Husband and Wife enter into this Agreement of their own free will and absent any coercion."

74.    Ultimately, the Transmutation Agreement provides that (i) their existing assets shall continue to be held as separate or community property based on their current classification; (ii) all proceeds, profits and gains from the assets of Far West Corona or C2AS-LP shall be deemed community property; (iii) all assets acquired by either spouse after the date of the Transmutation Agreement shall be deemed separate property, and (iv) all business ventures, investments, partnerships or interests in legal entities, and any proceeds, profits and gains therefrom after the date of the Transmutation Agreement shall be deemed separate property.

75.    The Debtor and S. Doroshin purportedly entered into this Transmutation Agreement seven days before C2AS-LP executed the C2AS Loan Documents and the Debtor executed the C2AS Guaranty.

76.    The Debtor and S. Doroshina never provided a copy of the Transmutation Agreement or disclosed its existence to Alliance Bank or the Plaintiff until May 2013.

77.    Despite numerous informal requests and formal discovery demands, neither the Debtor nor S. Doroshin have provided the Plaintiff with the original copy of the Transmutation Agreement so that the Plaintiff can analyze its authenticity, the genuineness of its signatures, or the age of the document.

78.    Following the entry of the C2AS Judgment and the Far West Judgment, the Debtor appeared on March 4, 2014 for a judgment debtor examination set by the Plaintiff.    At that judgment debtor examination, the Debtor testified to the following:

        a.    She has no understanding of what a transmutation agreement is.

        b.    She was not involved in the preparation of the Transmutation Agreement.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**FIRST AMENDED COMPLAINT**

c.      She did not recall making a full and complete disclosure of her assets and all facts relevant to the Transmutation Agreement to S. Doroshin at the time that the Transmutation Agreement was purportedly signed.

d.      She did not recall S. Doroshin making a full and complete disclosure of all of his assets and all facts relevant to the Transmutation Agreement to her at the time the Transmutation Agreement was purportedly signed.

e.      She does not recall what separate property she owned when the Transmutation Agreement was signed.

f.      She does not recall ever sitting down with S. Doroshin and discussing what each other's separate property was at any time in the last 10 years.

g.      She does not have any understanding as to the legal effect of the Transmutation Agreement.

h.      She believes that California is a community property state and that if she and S. Doroshin get divorced they divide everything equally.

i.      She did not recall every having a discussion that she had waived her right to community property and 50% of the assets.

j.      She believes that half of the stuff that she and S. Doroshin owns is hers.

k.      She does not recall having a discussion with anyone about her ownership or lack of ownership related to her community property.

79.     Upon information and belief, the Debtor and S. Doroshin did not record the Transmutation Agreement as required under California Family Code § 852 in order to be effective as against the Plaintiff.

80.     Upon information and belief, the Debtor testified at her 341(a) meeting of creditors that the Transmutation Agreement had not been recorded, and that it had not been provided to the Plaintiff or to Alliance Bank prior than May 2013.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**FIRST AMENDED COMPLAINT**

**K.      The Debtor's Suspicious Pre-Bankruptcy Transactions.**

81.      In connection with the Plaintiff's efforts to obtain post-judgment discovery and examinations of the Debtor, the Debtor provided various bank records to the Plaintiff related to transactions that occurred in 2013.

82.      The Plaintiff then questioned the Debtor with respect to those bank records in connection with the judgment debtor examination of the Debtor that took place on March 4, 2014. During that judgment debtor examination, the Debtor testified that:

        a.      She and S. Doroshin held a joint account at One West Bank.

        b.      With respect to transactions identified on the bank statements showing over 20 deposits of over $10,000 each and a number of deposits ranging from $20,000 to $30,000 during the prior six months, the Debtor testified that she did not have any idea where those deposits came from.

        c.      She testified that she believes that S. Doroshin deposits the money into the account.

        d.      She further testified that S. Doroshin typically gives her checks, which she deposits into her account, and then has cashier's checks made out from the account that she then gives back to S. Doroshin.

        e.      She disclosed that there was a period of time where she received over $100,000 in checks and then obtained cashier's checks to give to S. Doroshin.

        f.      She testified that all cashier's checks from the joint account are made out to S. Doroshin, and that she has not made any checks out to anybody else.

83.      The Plaintiff has attempted to obtain more recent bank records from the Debtor in connection with its post-judgment discovery, but the Debtor has not provided the Plaintiff with such records.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**FIRST AMENDED COMPLAINT**

**IV.**

**FIRST CLAIM FOR RELIEF**

**[Against the Debtor and S. Doroshin for Determination of Nondischargeability of Debt
Pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 524(b)(2): False Representations or Fraud]**

84.    The Plaintiff incorporates by reference and reasserts each of the allegations set forth in paragraphs 1 through 83, inclusive, as though set forth in full.

85.    As alleged above, the Debtor and S. Doroshin knowingly made false representations to Alliance Bank in connection with obtaining the C2AS Loan and the Far West Loan, upon which Alliance Bank reasonably relied.

86.    As alleged above, these false statements included the misrepresentation of the Debtor's skills, experience and expertise in real estate development projects, as well as her involvement in the real estate projects that were the subject of the C2AS Loan and the Far West Loan, upon which Alliance Bank relied upon in extending credit to C2AS-LP and Far West Corona.

87.    The Debtor and S. Doroshin continued to misrepresent the Debtor's skills, experience and expertise in real estate development projects, as well as her involvement in the real estate projects that were the subject of the C2AS Loan and the Far West Loan, and each subsequent extension or modification of the C2AS Loan or the Far West Loan, upon which Alliance Bank reasonably relied.

88.    The Debtor's and S. Doroshin's actions evidence an intention to deceive Alliance Bank so that C2AS and Far West Corona could obtain the proceeds of the C2AS Loan and the Far West Corona Loan, respectively.

89.    The Personal Financial Statements that the Debtor and S. Doroshin submitted to Alliance Bank, and upon which Alliance Bank relied, materially overstated the net worth of the Debtor, at the inception of the loans and with respect to each extension or modification thereafter.

90.    The resume of the Debtor that the Debtor and S. Doroshin submitted to Alliance Bank, and upon which Alliance Bank relied, materially overstated the Debtor's skills, experience and expertise with real estate entitlement and development work.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**FIRST AMENDED COMPLAINT**

91.     The Debtor and S. Doroshin failed to disclose the existence of the Transmutation Agreement, which was signed seven days before the signing of the C2AS Loan, which materially affected the future assets of the Debtor.

92.     Had Alliance Bank known that the Debtor had no experience whatsoever in real estate transactions, had inflated her assets and net worth, and entered into the Transmutation Agreement, the bank would not have extended credit or agreed to modify or extend the C2AS Loans and the Far West Loans.

93.     As a proximate cause of the Debtor's and S. Doroshin's false representations, the Plaintiff sustained damages in excess of $27 million on account of the C2AS Claim and the Far West Claim.   Additionally, the Plaintiff has incurred significant costs and attorneys' fees in collecting said sum, which will be shown according to proof at the time of trial.

94.     To the extent that the obligations of the Debtor are ultimately adjudicated to be community debts for which S. Doroshin would be liable, the Plaintiff seeks a determination that such obligations are nondischargeable as to the community property assets of S. Doroshin pursuant to Sections 523(a)(2)(A) and 524(b)(2) in a hypothetical bankruptcy case commenced by S. Doroshin.

95.     Based on the allegations as alleged herein, the Plaintiff requests a determination by this Bankruptcy Court that the award for damages, punitive damages and any and all other claims, debts and damages by the Debtor and S. Doroshin to the Plaintiff arising from or relating to the allegations herein are not dischargeable pursuant to Sections 523(a)(2)(A) and 524(b)(2) of the Bankruptcy Code.

**V.**

**SECOND CLAIM FOR RELIEF**

**[Against the Debtor and S. Doroshin for Determination of Nondischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2)(B) and 524(b)(2): False Statements in Writings ]**

96.     The Plaintiff incorporates by reference and reasserts each of the allegations set forth in paragraphs 1 through 95, inclusive, as though set forth in full.

97.    As alleged above, the Debtor and S. Doroshin knowingly made statements in writing that were materially false, respecting the Debtor's financial condition, in connection with obtaining the C2AS Loan and the Far West Loan, upon which Alliance Bank reasonably relied.

98.    The Personal Financial Statements that the Debtor and S. Doroshin submitted to Alliance Bank, and upon which Alliance Bank relied, materially overstated the net worth of the Debtor, at the inception of the loans and with respect to each extension or modification thereafter.

99.    The resume of the Debtor that the Debtor and S. Doroshin submitted to Alliance Bank, and upon which Alliance Bank relied, materially overstated the Debtor's skills, experience and expertise with real estate entitlement and development work.

100.    Had Alliance Bank known that the Debtor inflated her assets and net worth and entered into the Transmutation Agreement, the bank would not have extended credit or agreed to modify or extend the C2AS Loans and the Far West Loans.

101.    As a proximate cause of the Debtor's and S. Doroshin's false representations, the Plaintiff sustained damages in excess of $27 million on account of the C2AS Claim and the Far West Claim.    Additionally, the Plaintiff has incurred significant costs and attorneys' fees in collecting said sum, which will be shown according to proof at the time of trial.

102.    To the extent that the obligations of the Debtor are ultimately adjudicated to be community debts for which S. Doroshin would be liable, the Plaintiff seeks a determination that such obligations are nondischargeable as to the community property assets of S. Doroshin pursuant to Sections 523(a)(2)(B) and 524(b)(2) in a hypothetical bankruptcy case commenced by S. Doroshin.

103.    Based on the allegations as alleged herein, the Plaintiff requests a determination by this Bankruptcy Court that the award for damages, punitive damages and any and all other claims, debts and damages by the Debtor and S. Doroshin to the Plaintiff arising from or relating to the allegations herein are not dischargeable pursuant to Section 523(a)(2)(B) and 524(b)(2) of the Bankruptcy Code.

BN 18454789V1

21

## VI.

## THIRD CLAIM FOR RELIEF

**[Against the Debtor and S. Doroshin for Determination of Nondischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(4) and 524(b)(2): Fraud, Larceny and Embezzlement]**

104.   The Plaintiff incorporates by reference and reasserts each of the allegations set forth in paragraphs 1 through 103, inclusive, as though set forth in full.

105.   As alleged above, the Debtor and S. Doroshin knowingly made statements in writing and provided information to Alliance Bank that were materially false, respecting the Debtor's skills, experience and expertise in real estate development projects, as well as her involvement in the real estate projects that were the subject of the C2AS Loan and the Far West Loan, upon which Alliance Bank relied upon in extending credit to C2AS-LP and Far West Corona.

106.   The Debtor and S. Doroshin continued to fraudulently misrepresent her skills, experience and expertise in real estate development projects, as well as her involvement in the real estate projects that were the subject of the C2AS Loan and the Far West Loan, and each subsequent extension or modification of the C2AS Loan or the Far West Loan, upon which Alliance Bank reasonably relied.

107.   As alleged above, the Debtor and S. Doroshin knowingly made statements in writing and provided information to Alliance Bank that were materially false with respect to the Personal Financial Statements that the Debtor and S. Doroshin submitted to Alliance Bank, and upon which Alliance Bank relied, which had materially overstated the net worth of the Debtor, at the inception of the loans and with respect to each extension or modification thereafter.

108.   The Debtor was an officer of C2AS and Far West Corona, and while those entities were insolvent the Debtor owed a fiduciary duty to the creditors of those entities, including the Alliance Bank.  The Debtor's and S. Doroshin's fraud against Alliance Bank occurred while the Debtor was acting in a fiduciary capacity.

109.   The Debtor's and S. Doroshin's conduct as alleged herein demonstrates a breach of those duties.

BN 18454789V1

22

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**FIRST AMENDED COMPLAINT**

110.    The Debtor and S. Doroshin enabled C2AS-LP, Far West Corona, S. Doroshin, and herself to benefit from fraudulently obtaining loan advances from the Plaintiff.

111.    Upon information and belief, the Debtor and S. Doroshin wrongfully took and dissipated the loan proceeds and subsequent advances made by Alliance Bank pursuant to the C2AS Loan and the Far West Loan for hers and S. Doroshin's own purposes and without consent.

112.    As a proximate cause of the Debtor's and S. Doroshin's conduct, the Plaintiff sustained damages in excess of $27 million on account of the C2AS Claim and the Far West Claim.  Additionally, the Plaintiff has incurred significant costs and attorneys' fees in collecting said sum, which will be shown according to proof at the time of trial.

113.    To the extent that the obligations of the Debtor are ultimately adjudicated to be community debts for which S. Doroshin would be liable, the Plaintiff seeks a determination that such obligations are nondischargeable as to the community property assets of S. Doroshin pursuant to Sections 524(a)(3) and 524(b)(2)(A) in a hypothetical bankruptcy case commenced by S. Doroshin.

114.    Based on the allegations as alleged herein, the Plaintiff requests a determination by this Bankruptcy Court that the award for damages, punitive damages and any and all other claims, debts and damages by the Debtor to the Plaintiff arising from or relating to the allegations herein are not dischargeable pursuant to Sections 523(a)(4) and 524(b)(2)of the Bankruptcy Code.

**VII.**

**FOURTH CLAIM FOR RELIEF**

**[Against the Debtor and S. Dorshin for Determination of Nondischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(6) and 524(b)(2):  Willful and Malicious Injury]**

115.    The Plaintiff incorporates by reference and reasserts each of the allegations set forth in paragraphs 1 through 114, inclusive, as though set forth in full.

116.    As alleged above, the Debtor and S. Doroshin knowingly made statements in writing and provided information to Alliance Bank that were materially false, respecting the Debtor's skills, experience and expertise in real estate development projects, as well as her involvement in the real estate projects that were the subject of the C2AS Loan and the Far West

BN 18454789V1                    23

1    Loan, upon which Alliance Bank relied upon in extending credit to C2AS-LP and Far West

2    Corona.

3        117.    The Debtor and S. Doroshin continued to fraudulently misrepresent her skills,

4    experience and expertise in real estate development projects, as well as her involvement in the

5    real estate projects that were the subject of the C2AS Loan and the Far West Loan, in each

6    subsequent extension or modification of the C2AS Loan or the Far West Loan, upon which

7    Alliance Bank reasonably relied.

8        118.    As alleged above, the Debtor and S. Doroshin knowingly made statements in

9    writing and provided information to Alliance Bank that were materially false with respect to the

10    Personal Financial Statements that the Debtor and S. Doroshin submitted to Alliance Bank, and

11    upon which Alliance Bank relied, which had materially overstated the net worth of the Debtor, at

12    the inception of the loans and with respect to each extension or modification thereafter.

13        119.    The Debtor and S. Doroshin effectuated a fraudulent scheme by inducing the

14    Plaintiff to provide the C2AS Loan and the Far West Loan and subsequent advances, extensions

15    or modifications as to each in furtherance of the scheme.

16        120.    The execution of the Transmutation Agreement reduced the assets available for the

17    Debtor to satisfy any obligation due under the C2AS Guaranty or the Far West Guaranty.  The

18    Debtor and S. Doroshin intended to enter into the Transmutation Agreement for the intended

19    purpose of being able to frustrate or eliminate the Plaintiff's ability to reach the Debtor's and S.

20    Doroshin's community assets.

21        121.    The resume of the Debtor that the Debtor and S. Doroshin submitted to Alliance

22    Bank, and upon which Alliance Bank relied, materially overstated the Debtor's skills, experience

23    and expertise with real estate entitlement and development work.

24        122.    The Debtor and S. Doroshin willfully and maliciously injured the Plaintiff, and the

25    Debtor's and S. Doroshin's actions were committed with knowledge that harm to the Plaintiff was

26    substantially certain.

27        123.    No just cause or excuse exists for the Debtor's and S. Doroshin's actions.

28

BN 18454789V1

24

124.  As a proximate cause of the Debtor's and S. Doroshin's conduct, the Plaintiff sustained damages in excess of $27 million on account of the C2AS Claim and the Far West Claim.  Additionally, the Plaintiff has incurred significant costs and attorneys' fees in collecting said sum, which will be shown according to proof at the time of trial.

125.  To the extent that the obligations of the Debtor are ultimately adjudicated to be community debts for which S. Doroshin would be liable, the Plaintiff seeks a determination that such obligations are nondischargeable as to the community property assets of S. Doroshin pursuant to Sections 523(a)(6) and 524(b)(2) in a hypothetical bankruptcy case commenced by S. Doroshin.

126.  Based on the allegations as alleged herein, the Plaintiff requests a determination by this Bankruptcy Court that the award for damages, punitive damages and any and all other claims, debts and damages by the Debtor and S. Doroshin to the Plaintiff arising from or relating to the allegations herein are not dischargeable pursuant to Sections 523(a)(6) and 524(b)(2) of the Bankruptcy Code.

## VIII.

### FIFTH CLAIM FOR RELIEF

**[Against the Debtor for Objection to Discharge
Pursuant to 11 U.S.C. § 727(a)(2):  Transfer and Concealment of Assets]**

127.  The Plaintiff incorporates by reference and reasserts each of the allegations set forth in paragraphs 1 through 125, inclusive, as though set forth in full.

128.  The Debtor's Personal Financial Statements indicate that the Debtor owned three residences, had $300,000 in furnishings, and nearly $1 million in cash.  The Debtor's *Schedule B – Personal Property* [Docket No. 1] reveals less than $200 in cash or checking account funds, and less than $20,000 in household goods and furnishings, clothes and jewelry.  The Debtor has not adequately explained the diminution of those assets.

129.  Bank statements for the Debtor's joint checking account at One West Bank with S. Doroshin has revealed over a hundred thousand dollars in deposits and immediate withdrawals.

BN 18454789V1

25

**FIRST AMENDED COMPLAINT**

The Debtor has not adequately disclosed the source of the funds and the purpose of the withdrawals and to where such withdrawals were directed.

130. Based on these allegations, the Plaintiff requests that this Bankruptcy Court enter judgment denying the Debtor's discharge under section 727(a)(2) of the Bankruptcy Code.

## IX.

### SIXTH CLAIM FOR RELIEF

**[Against the Debtor for Objection to Discharge
Pursuant to 11 U.S.C. § 727(a)(3): Failure to Maintain Records]**

131. The Plaintiff incorporates by reference and reasserts each of the allegations set forth in paragraphs 1 through 130, inclusive, as though set forth in full.

132. The Debtor has failed to provide sufficient records and documentation to the Plaintiff in connection with the post-judgment discovery with respect to the Transmutation Agreement, the sources and uses of the funds deposited into the One West Bank account or other accounts; the diminution of the Debtor's assets as listed on her Personal Financial Statements, and records to permit the Plaintiff to ascertain what may be community property or separate property of the Debtor.

133. The Debtor in her capacity as principal of C2AS-LP, Far West Corona, and their affiliated entities has concealed, destroyed, or failed to keep or preserve recorded information, including books and records regarding the transactions pertaining to their business affairs and other assets.

134. The Debtor has concealed, destroyed, or failed to keep or preserve recorded information, including books and records regarding his transactions pertaining to her business affairs and other assets. The Debtor has no justification for such failure to keep and preserve such information.

135. Based on these allegations, the Plaintiff requests that this Bankruptcy Court enter judgment denying the Debtor's discharge under section 727(a)(3) of the Bankruptcy Code.

X.

### SEVENTH CLAIM FOR RELIEF

**[Against the Debtor for Objection to Discharge
Pursuant to 11 U.S.C. § 727(a)(5):  Loss of Assets]**

136.    The Plaintiff incorporates by reference and reasserts each of the allegations set forth in paragraphs 1 through 135, inclusive, as though set forth in full.

137.    The Debtor has failed to explain satisfactorily any loss of assets or deficiency of assets to meet the Debtor's liabilities.

138.    The Debtor's Personal Financial Statements indicate that the Debtor owned three residences, had $300,000 in furnishings, and nearly $1 million in cash.  The Debtor's Schedule B – Personal Property reveals less than $200 in cash or checking account funds, and less than $20,000 in household goods and furnishings, clothes and jewelry.  The Debtor has not adequately explained the dissipation of those assets.

139.    Based on these allegations, the Plaintiff requests that this Bankruptcy Court enter judgment denying the Debtor's discharge under section 727(a)(5) of the Bankruptcy Code.

XI.

### EIGHTH CLAIM FOR RELIEF

**[Against the Debtor and S. Doroshin for Declaratory Relief
Invalidating or Limiting the Transmutation Agreement]**

140.    The Plaintiff incorporates by reference and reasserts each of the allegations set forth in paragraphs 1 through 139, inclusive, as though set forth in full.

141.    The Debtor and S. Doroshin did not comply with the requirements under the California Family Code and applicable case law to effectuate a transmutation of their assets.

142.    For example, the Debtor and S. Doroshin did not fully disclose all of their assets to each other prior to the execution of the Transmutation Agreement.

143.    The Debtor and S. Doroshin never provided notice of the Transmutation Agreement to Alliance Bank or the Plaintiff until May 2013.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**FIRST AMENDED COMPLAINT**

144.    Upon information and belief, the Debtor and S. Doroshin did not record the Transmutation Agreement with the applicable county recorder's office.

145.    Moreover, to the extent that the Transmutation Agreement is effective, the Debtor's and S. Doroshin's conduct treatment of their assets may have resulted in commingling of separate and community property, which would further transmute separate property back to community property status.

146.    Based on these allegations, the Plaintiff requests that this Bankruptcy Court enter judgment declaring that the Transmutation Agreement is invalid and of no force and effect, or limiting the scope and effect of the Transmutation Agreement due to any commingling of assets by the Debtor and S. Doroshin.

**XII.**

**<u>NINTH CLAIM FOR RELIEF</u>**

**[Against the Debtor and S. Doroshin for
Rescission of the Settlement Agreements]**

147.    The Plaintiff incorporates by reference and reasserts each of the allegations set forth in paragraphs 1 through 146, inclusive, as though set forth in full.

148.    The Debtor and S. Doroshin concealed the existence of the Transmutation Agreement from the Plaintiff prior to the execution of the Settlement Agreements.

149.    A material component of the Settlement Agreements was the Plaintiff's ability to continue to pursue its claims against the Debtor with respect to the C2AS Arbitration Award and the Far West Arbitration Award.

150.    A material component of the Plaintiff's ability to pursue its claims against the Debtor was the ability to seek recourse against the Debtor's community property interests.

151.    Following the execution of the Settlement Agreements in January 2012, S. Doroshin disclosed the existence of the Transmutation Agreement in May 2013 in connection with the Plaintiff's post judgment debtor examinations.

152.    Had the Plaintiff known about the existence and the terms of the Transmutation Agreement, the Plaintiff would not have entered into the Settlement Agreements.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**FIRST AMENDED COMPLAINT**

153.    The Plaintiff is entitled to rescind the Settlement Agreements pursuant to California Civil Code Section 1689.

154.    As a result of the Debtor's and S. Doroshin's failure to disclose the existence of the Transmutation Agreement, the Plaintiff will suffer substantial harm and injury if the Settlement Agreements are not rescinded

155.    Based on these allegations, the Plaintiff requests that the Bankruptcy Court enter judgment rescinding the Settlement Agreements.

## XIII.

## TENTH CLAIM FOR RELIEF

### [Against the Debtor and S. Doroshin for Fraud]

156.    The Plaintiff incorporates by reference and reasserts each of the allegations set forth in paragraphs 1 through 155, inclusive, as though set forth in full.

157.    As alleged above, the Debtor and S. Doroshin knowingly made false representations to Alliance Bank in connection with obtaining the C2AS Loan and the Far West Loan, upon which Alliance Bank reasonably relied.

158.    As alleged above, these false statements included the misrepresentation of the Debtor's skills, experience and expertise in real estate development projects, as well as her involvement in the real estate projects that were the subject of the C2AS Loan and the Far West Loan, upon which Alliance Bank relied upon in extending credit to C2AS-LP and Far West Corona.

159.    The Debtor and S. Doroshin continued to misrepresent the Debtor's skills, experience and expertise in real estate development projects, as well as her involvement in the real estate projects that were the subject of the C2AS Loan and the Far West Loan, in each subsequent extension or modification of the C2AS Loan or the Far West Loan, upon which Alliance Bank reasonably relied.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**FIRST AMENDED COMPLAINT**

160.    The Debtor's and S. Doroshin's actions evidence an intention to deceive Alliance Bank so that C2AS and Far West Corona could obtain the proceeds of the C2AS Loan and the Far West Corona Loan, respectively.

161.    The Personal Financial Statements that the Debtor and S. Doroshin submitted to Alliance Bank, and upon which Alliance Bank relied, materially overstated the net worth of the Debtor, at the inception of the loans and with respect to each extension or modification thereafter.

162.    The Debtor and S. Doroshin failed to disclose the existence of the Transmutation Agreement, which was signed seven days before the signing of the C2AS Loan, which materially affected the future assets of the Debtor.

163.    Had Alliance Bank known that the Debtor had no experience whatsoever in real estate transactions, had inflated her assets and net worth, and entered into the Transmutation Agreement, the bank would not have extended credit or agreed to modify or extend the C2AS Loans and the Far West Loans.

164.    As a proximate cause of the Debtor's and S. Doroshin's fraud, the Plaintiff sustained damages in excess of $27 million on account of the C2AS Claim and the Far West Claim. Additionally, the Plaintiff has incurred significant costs and attorneys' fees in collecting said sum, which will be shown according to proof at the time of trial.

## XIV.

## ELEVENTH CLAIM FOR RELIEF

### [Against the Debtor and S. Doroshin for Negligent Misrepresentation]

165.    The Plaintiff incorporates by reference and reasserts each of the allegations set forth in paragraphs 1 through 164, inclusive, as though set forth in full.

166.    As alleged above, the Debtor and S. Doroshin knowingly and negligently made false representations to Alliance Bank in connection with obtaining the C2AS Loan and the Far West Loan, upon which Alliance Bank reasonably relied.

167.    As alleged above, these false statements included the misrepresentation of the Debtor's skills, experience and expertise in real estate development projects, as well as her

BN 18454789V1

30

involvement in the real estate projects that were the subject of the C2AS Loan and the Far West Loan, upon which Alliance Bank relied upon in extending credit to C2AS-LP and Far West Corona.

168.    The Debtor and S. Doroshin continued to misrepresent the Debtor's skills, experience and expertise in real estate development projects, as well as her involvement in the real estate projects that were the subject of the C2AS Loan and the Far West Loan, in each subsequent extension or modification of the C2AS Loan or the Far West Loan, upon which Alliance Bank reasonably relied.

169.    The Debtor's and S. Doroshin's actions evidence an intention to deceive Alliance Bank so that C2AS and Far West Corona could obtain the proceeds of the C2AS Loan and the Far West Corona Loan, respectively.

170.    The Personal Financial Statements that the Debtor and S. Doroshin submitted to Alliance Bank, and upon which Alliance Bank relied, materially overstated the net worth of the Debtor, at the inception of the loans and with respect to each extension or modification thereafter.

171.    The Debtor and S. Doroshin failed to disclose the existence of the Transmutation Agreement, which was signed seven days before the signing of the C2AS Loan, which materially affected the future assets of the Debtor.

172.    Had Alliance Bank known that the Debtor had no experience whatsoever in real estate transactions, had inflated her assets and net worth, and entered into the Transmutation Agreement, the bank would not have extended credit or agreed to modify or extend the C2AS Loans and the Far West Loans.

173.    As a proximate cause of the Debtor's and S. Doroshin's fraud, the Plaintiff sustained damages in excess of $27 million on account of the C2AS Claim and the Far West Claim. Additionally, the Plaintiff has incurred significant costs and attorneys' fees in collecting said sum, which will be shown according to proof at the time of trial.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**FIRST AMENDED COMPLAINT**

**WHEREFORE, the Plaintiff prays that the Court enter judgment as follows:**

1.      For actual damages in an amount not less than $27 million, plus accrued interest, attorneys' fees and costs, the sum of which will be shown according to proof at the time of trial, as against the Debtor and S. Doroshin;

2.      For punitive damages arising from the Debtor's and S. Doroshin's willful and wanton conduct, the sum of which will be shown according to proof at the time of trial, as against the Debtor and S. Doroshin;

3.      That the obligations of the Debtor, and any and all other claims, debts and damages owed by the Debtor to the Plaintiff arising from or relating to the allegations herein are not dischargeable pursuant to Sections 523(a)(2), 523(a)(4) or (a)(6) of the Bankruptcy Code with respect to the Debtor, and are not dischargeable as to S. Doroshin pursuant to Section 524(b)(2);

4.      That the Debtor be denied discharge pursuant to Sections 727(a)(2), (a)(3), or (a)(5) of the Bankruptcy Code;

5.      For declaratory relief finding that the Transmutation Agreement is void and unenforceable;

6.      For rescission of the Settlement Agreements;

7.      For actual and punitive damages against S. Doroshin for fraud, fraudulent misrepresentation and negligent misrepresentation;

8.      For attorneys' fees and costs of suit incurred in prosecuting this Complaint; and

9.      For such other and further relief as the Court deems just and proper.

DATED:  June 8, 2015                              BUCHALTER NEMER
                                                  A Professional Corporation


                                                  By:___/s/ Anthony J. Napolitano_____
                                                       ANTHONY J. NAPOLITANO

                                                  Attorneys for Plaintiff
                                                  CALIFORNIA BANK & TRUST

# EXHIBIT 1

# PERSONAL FINANCIAL STATEMENT FOR:
### Anna Doroshina
### 32524 SEACLIFF DRIVE
### RANCHO PALOS VERDES, CA 90275

## AS OF 5-15-06

## ASSETS

| | |
|---|---|
| CASH ON HAND: | $ 530,000.00 |
| CASH DUE FROM ESCROW 5-22-06: | 547,000.00 |
| PRIMARY RESIDENCE*: | 3,800,000.00 |
| SECONDARY RESIDENCE**: | 3,100,000.00 |
| TERTIARY RESIDENCE***: | 2,250,000.00 |
| HOUSEHOLD, JEWELRY, ANTIQUES: | 300,000.00 |
| 2004 LEXUS LX470: | 50,000.00 |
| 2002 MBZ S500: | 45,000.00 |
| 2005 HONDA CRV: | 18,000.00 |
| 2004 TOYOTA HIGHLANDER: | 12,000.00 |
| 2 SFR PARCELS WITH FINAL MAP IN CORONA: | 600,000.00 |
| 1 COMMERCIAL PARCEL IN CORONA: | 225,000.00 |
| FAR WEST HOUSING, LLC OWNERSHIP: | 57,434,000.00 |
| FAR WEST CORONA PROPERTIES, LP  : | 31,000,000.00 |
| | |
| **TOTAL ASSETS:** | **99,911,000.00** |

## LIABILITIES

| | |
|---|---|
| ACCOUNTS PAYABLE – HOUSEHOLD: | 40,000.00 |
| PRIMARY RESIDENCE MORTGAGE: | 750,000.00 |
| SECONDARY RESIDENCE MORTGAGE: | 1,000,000.00 |
| TERTIARY RESIDENCE MORTGAGE: | 900,000.00 |
| FAR WEST CORONA PROPERTIES, LP | 7,000,000.00 |
| | |
| **TOTAL LIABILITIES:** | **9,690,000.00** |
| | |
| **NET WORTH:** | **90,221,000.00** |

*address: 32524 Seacliff Drive, Rancho Palos Verdes, CA 90275
** address: 32534 Seacliff Drive, Rancho Palos Verdes, CA 90275
***address: 350 Camino Sur, Palm Springs, CA 92262

==================================================================================

*ALLIANCE BANK*

_____    _____

The attached is the personal financial statement of____May 15th, 2006_____for_____Anna Doroshina_____and it is herewith
furnished for the purpose of procuring credit, and is to be regarded as continuous until another shall be substituted for it.  If the undersigned, or
any endorser or guarantor of the obligation of the undersigned, at any time becomes insolvent, or commits an act of bankruptcy, or dies, or if
any writ of attachment, garnishment, execution or other legal processes be issued against property of the undersigned, or if any assessment for
taxes against the undersigned, other than on real property, is made by the Federal or State government, or any department thereof, or if any of
the representations contained or made in said statement prove to be untrue, or if the undersigned fails to notify you of any material change in
financial condition as set out in said statement, then and in either such case, all of the obligations of the undersigned to or held by you, either as
borrower or guarantor, shall immediately become due and payable without demand or notice.  In consideration of the granting or renewing of
any credit to the undersigned hereafter, the undersigned hereby waives the pleading of the statue of limitations as a defense to any obligation
of the undersigned to you.

I hereby certify I have carefully read said attached financial statement and it is a complete, true and correct statement to the best of my
knowledge and belief.

✓ _____
Signature

✓ _____
Signature



## PERSONAL FINANCIAL STATEMENT FOR:
### Anna Doroshina
### 32524 SEACLIFF DRIVE
### RANCHO PALOS VERDES, CA 90275

## AS OF 12-31-06

### ASSETS

| | |
|---|---:|
| CASH ON HAND: | $ 458,000.00 |
| PRIMARY RESIDENCE*: | 4,000,000.00 |
| SECONDARY RESIDENCE**: | 3,200,000.00 |
| TERTIARY RESIDENCE***: | 2,350,000.00 |
| HOUSEHOLD, JEWELRY, ANTIQUES: | 300,000.00 |
| 2004 LEXUS LX470: | 50,000.00 |
| 2002 MBZ S500: | 35,000.00 |
| 2005 HONDA CRV: | 18,000.00 |
| 2004 TOYOTA HIGHLANDER: | 12,000.00 |
| 2 SFR PARCELS WITH FINAL MAP IN CORONA: | 600,000.00 |
| 1 COMMERCIAL PARCEL IN CORONA: | 225,000.00 |
| FAR WEST HOUSING, LLC OWNERSHIP: | 57,434,000.00 |
| FAR WEST CORONA PROPERTIES, LP : | 75,000,000.00 |

**TOTAL ASSETS:**      143,682,000.00

### LIABILITIES

| | |
|---|---:|
| ACCOUNTS PAYABLE – HOUSEHOLD: | 18,000.00 |
| PRIMARY RESIDENCE MORTGAGE: | 750,000.00 |
| SECONDARY RESIDENCE MORTGAGE: | 1,000,000.00 |
| TERTIARY RESIDENCE MORTGAGE: | 900,000.00 |

**TOTAL LIABILITIES:**      2,668,000.00

**NET WORTH:**      141,014,000.00

*address: 32524 Seacliff Drive, Rancho Palos Verdes, CA 90275
** address: 32534 Seacliff Drive, Rancho Palos Verdes, CA 90275
***address: 350 Camino Sur, Palm Springs, CA 92262

====================================================================================

**ALLIANCE BANK**

The attached is the personal financial statement of _____December 31ˢᵗ, 2006_____ for _____Anna Doroshina_____ and
it is herewith furnished for the purpose of procuring credit, and is to be regarded as continuous until another shall be substituted for it. If the
undersigned, or any endorser or guarantor of the obligation of the undersigned, at any time becomes insolvent, or commits an act of
bankruptcy, or dies, or if any writ of attachment, garnishment, execution or other legal processes be issued against property of the undersigned,
or if any assessment for taxes against the undersigned, other than on real property, is made by the Federal or State government, or any
department thereof, or if any of the representations contained or made in said statement prove to be untrue, or if the undersigned fails to notify
you of any material change in financial condition as set out in said statement, then and in either such case, all of the obligations of the
undersigned to or held by you, either as borrower or guarantor, shall immediately become due and payable without demand or notice. In
consideration of the granting or renewing of any credit to the undersigned hereafter, the undersigned hereby waives the pleading of the statue
of limitations as a defense to any obligation of the undersigned to you.

I hereby certify I have carefully read said attached financial statement and it is a complete, true and correct statement to the best of my
knowledge and belief.

✓ _____
                    Signature

✓ _____
                    Signature



# PERSONAL FINANCIAL STATEMENT FOR:
### Anna Doroshina
### 32524 SEACLIFF DRIVE
### RANCHO PALOS VERDES, CA 90275

## AS OF 2-27-08

## ASSETS

| | |
|---|---:|
| CASH ON HAND: | $ 102,000.00 |
| CITY LAND TAKE PAYMENT: | 2,400.000.00 |
| REIMBURSEMENT DUE FROM RIVERSIDE CNTY*: | 4,700.000.00 |
| PRIMARY RESIDENCE: | 3,500,000.00 |
| SECONDARY RESIDENCE: | 2,700,000.00 |
| TERTIARY RESIDENCE: | 1,900,000.00 |
| HOUSEHOLD, JEWELRY, ANTIQUES: | 300,000.00 |
| 2004 LEXUS LX470: | 40,000.00 |
| 2007 MBZ GL550: | 88,000.00 |
| 2005 HONDA CRV: | 16,000.00 |
| 2004 TOYOTA HIGHLANDER: | 10,000.00 |
| 2 SFR PARCELS WITH FINAL MAP IN CORONA: | 500,000.00 |
| 1 COMMERCIAL PARCEL IN CORONA: | 180,000.00 |
| FAR WEST HOUSING, LLC OWNERSHIP: | 1,018,000.00 |
| C2AS,LP: | 23,769,000.00 |
| FAR WEST CORONA PROPERTIES, LP   : | 100,000,000.00 |

**TOTAL ASSETS:**               **141,223,000.00**

## LIABILITIES

| | |
|---|---:|
| ACCOUNTS PAYABLE – HOUSEHOLD: | 85,000.00 |
| PRIMARY RESIDENCE MORTGAGE: | 750,000.00 |
| SECONDARY RESIDENCE MORTGAGE: | 1,000,000.00 |
| TERTIARY RESIDENCE MORTGAGE: | 900,000.00 |
| CAR FINANCING: | 70,000.00 |
| LINES OF CREDIT: | 1,500,000.00 |
| MVV, LP NOTE PAYABLE: | 3,480,000.00 |
| PELICAN HOMES NOTE PAYABLE: | 4,861,000.00 |

**TOTAL LIABILITIES:**               **12,646,000.00**

**NET WORTH:**               **128,577,000.00**

*This is a reimbursement due to Centex Corporation for the construction of a portion of Foothill Parkway
(the same parkway that the city is taking the land for, above. They will be continuing to develop it from the
Centex improvement onwards west.) Far West JEC Corona Properties, LP purchased this reimbursement
from Centex Corporation when Centex, in turn, purchased 157 lots from Far West (C-3).

Exhibit 1, Page 000038

======================================================================================

**ALLIANCE BANK**

The attached is the personal financial statement of_____Anna Doroshina_____for_____February 28, 2008_____and it is herewith furnished for the purpose of procuring credit, and is to be regarded as continuous until another shall be substituted for it. If the undersigned, or any endorser or guarantor of the obligation of the undersigned, at any time becomes insolvent, or commits an act of bankruptcy, or dies, or if any writ of attachment, garnishment, execution or other legal processes be issued against property of the undersigned, or if any assessment for taxes against the undersigned, other than on real property, is made by the Federal or State government, or any department thereof, or if any of the representations contained or made in said statement prove to be untrue, or if the undersigned fails to notify you of any material change in financial condition as set out in said statement, then and in either such case, all of the obligations of the undersigned to or held by you, either as borrower or guarantor, shall immediately become due and payable without demand or notice.  In consideration of the granting or renewing of any credit to the undersigned hereafter, the undersigned hereby waives the pleading of the statue of limitations as a defense to any obligation of the undersigned to you.

I hereby certify I have carefully read said attached financial statement and it is a complete, true and correct statement to the best of my knowledge and belief.

✓ _____
                Signature

✓ _____
                Signature

Exhibit 1, Page 000039



**ALLIANCE BANK**
Discover What Better Means

# INDIVIDUAL FINANCIAL STATEMENT

To:                                                                        (Lender)

Name  _ANNA  DOROSHINA_                    Date of Birth _04|06|73_

Address _32524  SEACLIFF  DR.   RPV , CA_        Zip Code _90275_

**CHECK AS APPLICABLE** - Applicant is applying for this loan:

☑ Individually, without a co-signer or guaranty of a relative or other person(s)or entity. Note: Applicants, if married may apply for a separate account.

☐ Jointly, with the co-signature or guaranty of one or more persons or entities (including any existing guarantors).

NAMES OF OTHER PERSON(S) AND ENTITY(IES)

PLEASE INDICATE OR PROVIDE EXPLANATION RELATING TO ANY ASSETS OWNED JOINTLY OR BY A TRUST OR LIABILITIES OWED WITH OTHERS. (ATTACH SCHEDULES AND EXPLANATORY NOTES IF NECESSARY.)

STATEMENT OF FINANCIAL CONDITION OF ~~SEE ATTACHED~~ AS OF _____ . _____

| ASSETS | | AMOUNT | LIABILITIES | | AMOUNT |
|---|---|---|---|---|---|
| Cash | **SCHEDULE A** | | **Notes & Loans Payable (Other than Real Estate)** | **SCHEDULE G** | |
| | In This Institution | | | Notes Payable to Banks | |
| | Other Banks or S&Ls | | | Notes & Loans Payable (Other) | |
| Stocks & Bonds | **SCHEDULE B** | | **Insurance Loans** | **SCHEDULE C** | |
| | Marketable Securities | | | | |
| | Others | | | | |
| Tax | Tax Refund Due | | **Taxes Owed** | | |
| Insurance | **SCHEDULE C** | | **Accounts & Bills Payable** | **SCHEDULE H** | |
| | Cash Value | | | Bank Cards | |
| Accounts & Notes Receivable | **SCHEDULE D** | | | Open & Revolving Accounts | |
| | | | | Other | |
| Real Estate | **SCHEDULE E** | | **Real Estate Notes & Contracts Payable** | **SCHEDULE E** | |
| | Residence(s) | | | Residence(s) | |
| | Unimproved Land | | | Unimproved Land | |
| | Income Property(ies) | | | Income Property(ies) | |
| | Other | | | Other | |
| Other Assets | **SCHEDULE F** | | **Other Liabilities** | **SCHEDULE I** | |
| | Other Assets & Personal Property | | | | |
| | **TOTAL ASSETS** | $ | | **TOTAL LIABILITIES** | $ |

## RECAP OF INCOME AND EXPENSES
* See notice below before completing Other Income.

| | | | NET WORTH | (DIFFERENCE BETWEEN TOTAL ASSETS &TOTAL LIABILITIES) | $ |
|---|---|---|---|---|---|

| ANNUAL INCOME FOR YEAR _____ | | ANNUAL EXPENSES FOR YEAR _____ | | CONTINGENT LIABILITIES | |
|---|---|---|---|---|---|
| Salary or Wages | | Property Tax & Assessments | | As Endorser on Notes/Contracts | |
| Dividends or Interest | | Fed. & State Income Tax | | As Guarantor on Notes/Contracts | |
| Rentals (Gross Income) | | Real Estate Loan Payments | | For Taxes | |
| Business (Net Income) | | Payments on Contracts / Notes | | Other (Describe) | |
| Other Income (Describe) * | | Estimated Living Expenses | | | |
| | | Other: | | | |
| TOTAL INCOME | $ | TOTAL EXPENSES | $ | TOTAL | $ |

* Alimony, child support or separate maintenance payment income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation

**ALLIANCE BANK**

If applicant resides in a community property state, please complete the following concerning marital status:

Applicant is:  ☐ Married    ☐ Separated    ☐ Unmarried (Includes single, divorced and widowed)

Co-Applicant, if any, is: ☐ Married    ☐ Separated    ☐ Unmarried (Includes single, divorced and widowed)

| APPLICANT INFORMATION | | | | |
|---|---|---|---|---|
| Social Security No. | Driver's License No. | Home Phone | Business Phone | |
| Occupation | Name of Employer | No. of Years | Salary $ | per |
| Amount of alimony, child support and separate maintenance payment income. NOTE: Alimony, child support or separate maintenance payment income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation. $ | | | | |
| Name and address of payor of any alimony, child support or separate maintenance payment income disclosed above as a source of repayment. | | | | |
| Alimony child support, separate maintenance received under    ☐ court order    ☐ written agreement    ☐ oral | | | | |
| Income (salary, pension, social security, dividends, interest, etc.) Source: | | | $ | per month |
| Have you ever borrowed from any other branch of this institution?    Name:    Location:    Date: | | | | |
| Number of Dependents ___ Ages ___ | | | | |
| Have you established a trust? ☐ Yes ☐ No ☐ Revocable ☐ Irrevocable Name(s) of trustee(s): ___ | | | | |
| Have you made a will? ☐ Yes ☐ No Name of personal representative ___ | | | | |
| Have you guaranteed or endorsed the notes of any other person? ☐ Yes ☐ No Do you have any other contingent liabilities? ___ | | | | |
| Have any actions or suits been filed against you or any unsatisfied judgments or decrees entered against you, or have you been adjudged bankrupt in the last 14 years or made any assignments for creditors? ● Yes ● No | | | | |
| Names of References | Addresses | | | |

| CO-APPLICANT INFORMATION | | | | |
|---|---|---|---|---|
| Co-Applicant's Full Name | Addresses | | | |
| Social Security No. | Driver's License No | Home Phone | Business Phone | |
| Occupation | Name of Employer | No. of Years | Salary $ | per |
| Amount of alimony, child support and separate maintenance payment income. NOTE: Alimony, child support or separate maintenance payment income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation. $ | | | | |
| Name and address of payor of any alimony, child support or separate maintenance payment income disclosed above as a source of repayment. | | | | |
| Alimony, child support, separate maintenance received under    ☐ court order    ☐ written agreement    ☐ oral | | | | |
| Income (salary, pension, social security, dividends, interest, etc.) Source: | | | $ | per month |
| Have you ever borrowed from any other branch of this institution?    Name:    Location:    Date: | | | | |
| Number of Dependents (not listed by applicant) ___ Ages ___ | | | | |
| Have you established a trust? ☐ Yes ☐ No ☐ Revocable ☐ Irrevocable Name(s) of trustee(s): ___ | | | | |
| Have you made a will? ☐ Yes ☐ No Name of personal representative ___ | | | | |
| Have you guaranteed or endorsed the notes of any other person? ☐ Yes ☐ No Do you have any other contingent liabilities? ___ | | | | |
| Are there any outstanding judgments against you? ☐ Yes ☐ No    Have you been declared bankrupt within the last 7 years? ☐ Yes ☐ No | | | | |
| Names of References | Addresses | | | |

**SIGNATURES**

**APPLICANT'S SIGNATURE(S).**

I (we) hereby affirm that the foregoing information contained in this financial statement is presented for the purpose of obtaining credit as of the date indicated and is true, complete and correct. I understand Lender is relying on this statement of my financial condition in making loan(s) to me. Lender is authorized to make any investigation of my credit or employment status either directly or through any agency employed by Lender for that purpose. I agree to inform Lender immediately of any matter which will cause any significant change in my/our financial condition. I understand that Lender will retain this financial statement whether or not credit is granted.

Applicant's Signature _____ Date  11·3·8    Co-Applicant's Signature _____ Date _____

**CONSENT.** The lender may be relying on: 1) income from an individual who is not an applicant for the consumer loan, or 2) an individual co-borrower, owner, partner, officer or guarantor, for the business loan. Because of your relationship to the loan applicant or your role in the accommodation for the loan, your personal creditworthiness is a factor in the evaluation of the application or accommodation for the loan. By signing below, I authorize the financial institution to obtain a consumer credit report on me for that purpose to evaluate the loan application.

Date: _____    Signature _____    Social Security Number _____

Exhibit 1. Page 000041

# PERSONAL FINANCIAL STATEMENT FOR:
### Anna Doroshina
### 32524 SEACLIFF DRIVE
### RANCHO PALOS VERDES, CA 90275

## AS OF 10-24-08

## ASSETS

| | |
|---|---:|
| CASH ON HAND: | $ 133,000.00 |
| CITY LAND TAKE PAYMENT: | 2,400,000.00 |
| REIMBURSEMENT DUE FROM RIVERSIDE CNTY*: | 4,700,000.00 |
| PRIMARY RESIDENCE: | 3,500,000.00 |
| SECONDARY RESIDENCE: | 2,700,000.00 |
| TERTIARY RESIDENCE: | 1,900,000.00 |
| HOUSEHOLD, JEWELRY, ANTIQUES: | 300,000.00 |
| 2004 LEXUS LX470: | 35,000.00 |
| 2007 MBZ GL550: | 80,000.00 |
| 2005 HONDA CRV: | 15,000.00 |
| 2004 TOYOTA HIGHLANDER: | 10,000.00 |
| 2 SFR PARCELS WITH FINAL MAP IN CORONA: | 400,000.00 |
| 1 COMMERCIAL PARCEL IN CORONA: | 150,000.00 |
| FAR WEST HOUSING, LLC OWNERSHIP: | 1,002,000.00 |
| C2AS,LP: | 23,769,000.00 |
| FAR WEST CORONA PROPERTIES, LP  : | 100,000,000.00 |

**TOTAL ASSETS:**                          **141,094,000.00**

## LIABILITIES

| | |
|---|---:|
| ACCOUNTS PAYABLE – HOUSEHOLD: | 63,000.00 |
| PRIMARY RESIDENCE MORTGAGE: | 750,000.00 |
| SECONDARY RESIDENCE MORTGAGE: | 1,000,000.00 |
| TERTIARY RESIDENCE MORTGAGE: | 900,000.00 |
| CAR FINANCING: | 70,000.00 |
| LINES OF CREDIT: | 1,500,000.00 |
| MVV, LP NOTE PAYABLE: | 3,480,000.00 |
| PELICAN HOMES NOTE PAYABLE: | 4,861,000.00 |

**TOTAL LIABILITIES:**                     **12,624,000.00**

**NET WORTH:**                             **128,470,000.00**

*This is a reimbursement due to Centex Corporation for the construction of a portion of Foothill Parkway (the same parkway that the city is taking the land for, above. They will be continuing to develop it from the Centex improvement onwards west.) Far West JEC Corona Properties, LP purchased this reimbursement from Centex Corporation when Centex, in turn, purchased 157 lots from Far West (C-3).

10.24.08

Exhibit 1, Page 000043

## PERSONAL FINANCIAL STATEMENT FOR:
### Anna Doroshina
### 32524 SEACLIFF DRIVE
### RANCHO PALOS VERDES, CA 90275

### AS OF 4-08-09

### ASSETS

| | | |
|---|---|---|
| CASH ON HAND: | $ | 19,000.00 |
| PRIMARY RESIDENCE: | | 2,700,000.00* |
| SECONDARY RESIDENCE: | | 1,800,000.00* |
| TERTIARY RESIDENCE: | | 900,000.00* |
| HOUSEHOLD, JEWELRY, ANTIQUES: | | 200,000.00 |
| 2004 LEXUS LX470: | | 25,000.00 |
| 2007 MBZ GL550: | | 70,000.00 |
| 2005 HONDA CRV: | | 13,000.00 |
| 2004 TOYOTA HIGHLANDER: | | 8,000.00 |
| 2 SFR PARCELS WITH FINAL MAP IN CORONA: | | 200,000.00* |
| 1 COMMERCIAL PARCEL IN CORONA: | | 85,000.00* |
| NET EQUITY IN FAR WEST HOUSING, LLC: | | 150,000.00* |
| NET EQUITY IN C2AS, LP: | | 0.00* & ** |
| NET EQUITY IN FAR WEST CORONA PROPERTIES, LP: | | 0.00* & ** |

**TOTAL ASSETS:**                    6,170,000.00

### LIABILITIES

| | |
|---|---|
| ACCOUNTS PAYABLE – HOUSEHOLD: | 87,000.00 |
| PRIMARY RESIDENCE MORTGAGE: | 750,000.00 |
| LINE OF CREDIT SECUED BY PRIMARY RES.: | 1,000,000.00 |
| SECONDARY RESIDENCE MORTGAGE: | 1,000,000.00 |
| LINE OF CREDIT SECURED BY SECONDARY RES.: | 500,000.00 |
| TERTIARY RESIDENCE MORTGAGE: | 900,000.00 |
| CAR FINANCING: | 44,000.00 |
| MVV, LP NOTE PAYABLE: | 3,480,000.00 |
| PELICAN HOMES NOTE PAYABLE: | 4,861,000.00 |
| POTENTIAL LIABILITY – ALLIANCE LOANS: | 20,000,000.00*** |

**TOTAL LIABILITIES:**                    32,622,000.00

**NET WORTH:**                    <26,452,000.00>

* This amount reflects Ms. Doroshina's good faith estimate of the current market value of the identified asset.  However, Ms. Doroshina has not obtained an appraisal or other third party verification or analysis of this amount, and in light of current market conditions it is difficult to accurately assess the current value of these assets.  The recipient of these financials is advised that the value of the identified assets is subject to market fluctuation and volatility, that the actual value of the identified assets may be different that as shown above, and that these values may change in the future.  The recipient is encouraged to undertake its own analysis of values.

**Outstanding encumbrances on the underlying assets owned by these entities are greater than the current estimate fair market value of these assets.

***This item represents a contingent liability of Ms. Doroshina pursuant to certain personal guarantees in favor of Alliance Bank, with the ultimate amount of such claim being subject to a final determination of both liability and amount under applicable law.

# EXHIBIT 2

Exhibit 2, Page 000046

PERSONAL FINANCIAL STATEMENT FOR:                                    Page 1 of 1

From: Serge Doroshin [serge@farwestonline.net]
Sent: Tuesday, May 16, 2006 2:55 PM
To: Tim Peralta
Subject: RESUME

# RESUME FOR:
## ANNA DOROSHINA
### 32524 SEACLIFF DRIVE
### RANCHO PALOS VERDES, CA 90275

### AS OF 5-15-06

**2003-PRESENT:**  Entitled 319 acres in Corona, CA. Project is known as "Sierra Bella", consisting of. Full EIR done and certified. Specific Plan done and adopted. TTM approved. Property annexed into City of Corona. All environmental permits (Army Corps, Fish & Game, etc.) obtained. Getting ready to submit for second plan check; rough grading permit anticipated within 30-45 days. Have entered into a letter of intent with Toll Brothers for the sale of this property for $69,000,000.00.

**2003-4:**      Entitled approximately 80 acres in Corona, CA into 157 single family homesites. Processed TTM through the city, along with a CFD. Approved 2003 and sold to Centex Homes in 2004.

**2001-2:**      Entitled 120 acres into 64 single family homesites in Corona, CA. TTM and CFD processed through the city. Sold to Taylor Woodrow Homes in 2002.

**2000-1:**      Entitled 90 acres into 40 estate single family homesites in Norco, CA. TTM and CFD processed through the city. Sold to KB Homes in 2001.

**1998-0:**      Entitled 80 detached condominiums in Moorpark, CA on 10+ acres. TTM approved by the city. Sold to Shea Homes in 2000.

EXHIBIT
3

WITNESS Doroshina
DATE: 07/13/11
Shari Stellhorn
CSR No. 2807

file://C:\Documents and Settings\malliman\Local Settings\Temporary Internet Files\OLK4...  5/22/2006

# EXHIBIT 3

From the desk of                                                                                              Page 1 of 1

**From:** Serge Doroshin [serge@farwestonline.net]
**Sent:** Wednesday, May 17, 2006 7:47 AM
**To:** Tim Peralta
**Subject:** explanation

**Serge Doroshin**
**32524 Seacliff Drive**
**Rancho Palos Verdes, CA 90275**
**(310) 265-0835  serge3@cox.net**

May 17, 2006

### A BRIEF EXPLANATION RE WHY MY WIFE IS SOLELY APPLYING FOR THIS LOAN

Almost a dozen years ago I was involved in a rather nasty divorce and child custody battle. At stake was the future of my two small children. My then-wife had become an alcoholic and, in my opinion, was unable to care for them. She immediately hired a prominent attorney, who then claimed she was broke and sought to have his payment become my obligation. At the time, I owned a trading business with some of the newly-formed CIS states. Funding my opposition was repugnant and foolhardy. Simply put, I lost everything, went to a library, and learned Family Law. Over the course of the next several years I represented myself before the court, and was fortunately able to gain custody of my kids. Our joint accounts floundered, bills went unpaid, but I achieved my goal, albeit, at the price of my credit rating. I did not, however, seek bankruptcy protection. In later years I would often muse that in our system it is far worse to have bad credit than to have committed a major crime.

Some time later, I remarried (my present wife), and we began to build our life together. She had been there for me throughout my battles, and we started our life together living in a studio apartment with my two kids in a pretty rough neighborhood. From a personal perspective, it wasn't the best of times, as I had known luxury quite well. Nevertheless, we made it out, and in the course of ten years, have become wealthy. In the process, as I was still under the eyes of her attorney, Anna slowly, painfully slowly, was developing a credit rating. (It must be understood that she had recently arrived from Moscow, Russia and did not, therefore, have a credit rating.) Today, she sports a great score – the core of our crediworthiness. Beyond the simple credit rating, though, she has been an integral part of our business success. Basically, I negotiate the deals, entitle the land, and perform the day-to-ay duties, while she handles the back-room duties of the business.

I hope that this will satisfy the curious. I have no problem co-signing on the loan, but do believe that the package would be stronger without my presence.

Regards,

Serge Doroshin

Exhibit 3, Page 000049

# EXHIBIT 4

TRANSMUTATION AGREEMENT

This Transmutation Agreement ("Agreement") is made between Serge Doroshin ("Husband") and Anna Doroshina ("Wife").

RECITALS

A.   Husband and Wife were married on February 14, 1996.

B.   Husband and Wife have each made a full disclosure of their assets and all facts relevant to this Agreement.

C.   Wife is about to enter into two loan agreements with Alliance Bank ("Lender") that will require her to post a personal guarantee for any default against two of her entities: Far West Corona Properties, L.P. and C2AS, L.P..

D.   It is the intent of this Agreement to:

  1. Keep the status quo regarding all assets presently held by Wife as both her sole and separate property and as her share of any community property (as reflected on her Financial Statement that was submitted to Lender supporting these loans), and

  2. That all future business ventures and assets acquired after the date of this Agreement by Husband or Wife be considered separate property.

E.   Husband and Wife enter into this Agreement of their own free will and absent any coercion.

F.   This Agreement is not made in contemplation of a separation or dissolution.

AGREEMENT

1.   Husband and Wife, hereby declare and agree that all real property, personal property, and any proceeds, profits, and increases of whatever nature gained from the aforesaid assets held by both of us or standing of record in the name of either of us on the date of this Agreement, shall continue to be either separate or community as each is presently held.

2.   Husband and Wife further declare that all proceeds, profits, and increases gained from the sale of, or the sale of any assets of, to any unrelated third party of Far West Corona Properties, L.P. and/or C2AS, L.P. shall be deemed community property.

3.   Husband and Wife further declare that any and all assets acquired by either party after the date of this Agreement, shall be deemed separate property, including but not limited to, any real property, personal property, and any proceeds, profits, and increases of whatever nature gained from the aforesaid assets.

4.   Husband and Wife further declare that after the date of this Agreement, without limitation, any and all business ventures, investments, partnerships, interests in legal entities, as well as, without limitation, any and all proceeds, profits, and increases of whatever nature gained from the aforesaid endeavors that either party is participating in, shall be deemed separate property.

SD 0260

Exhibit 4. Page 000051

5.  Husband and Wife declare and agree that each has made a full and complete disclosure of their respective assets and all facts relevant to this Agreement.

6.  Husband and Wife understand and agree that this Agreement shall be binding upon their successors and heirs.

7.  This Agreement may only be changed, revoked or modified by a written instrument executed by both Husband and Wife.

8.  If any portion of this Agreement is found to be invalid, the remainder shall remain in full force and effect.

9.  This Agreement shall be construed according to the laws of the State of California.

Executed in Los Angeles County, California

Dated:  June 22, 2006

Husband:                                    Wife:

_____                _____
Serge Doroshin                              Anna Doroshina

SD 0261

Exhibit 4. Page 000052

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Buchalter Nemer, 1000 Wilshire Blvd, Ste. 1500, Los Angeles, CA 90017

A true and correct copy of the foregoing document entitled (specify)**: (1) FIRST AMENDED COMPLAINT FOR (I) DETERMINATION OF NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. SECTION 523; (II) OBJECTION TO DISCHARGE PURSUANT TO 11 U.S.C. SECTION 727; (III) DECLARATORY RELIEF; (IV) RESCISSION; (V) FRAUD; AND (VI) NEGLIGENT MISREPRESENTATION; (2) ADVERSARY PROCEEDING COVER SHEET** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) **JUNE 8, 2015**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Todd A. Frealy (TR) taftrustee@lnbyb.com, tfrealy@epiqsystems.com**
**Anthony J. Napolitano anapolitano@buchalter.com, IFS_filing@buchalter.com**
**United Stated Trustee (RS) ustpregion16.rs.ecf@usdoj.gov**

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (date) **June 8, 2015**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Defendant**
Serge Doroshin
420 W. Chino Dr.
Palm Springs, CA  92262

Jon R. Robertson
Robertson & Olsen, LLP
2 Park Plaza
Suite 730
Irvine, CA  92614
**(Counsel for Defendant)**

**Debtor/Defendant**
Anna Doroshina
420 W. Chino Dr.
Palm Springs, CA  92262

James R. Selth
Weintraub & Selth APC
11766 Wilshire Blvd
Suite 1170
Los Angeles, CA  90025
**(Counsel for Debtor)**

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 8, 2015 | Monica Hampton | /s/ Monica Hampton |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**